IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.S., a minor by and through CARA SHERMAN, her parent and natural guardian, and A.S., a minor by and through MARY MCCAULEY SILER, her parent and natural guardian, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES SOCCER FEDERATION, INC. and US YOUTH SOCCER ASSOCIATION, INC.,<br><br>Defendants. | Civil Action No. 18-709<br><br>Judge Nora Barry Fischer<br><br>**JURY TRIAL DEMANDED**<br><br>**ELECTRONICALLY FILED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs A.S., a minor, by and through Cara Sherman, her parent and natural guardian, and A.S., a minor, by and through Mary McCauley Siler, her parent and natural guardian, individually and on behalf of all other similarly situated individuals, through their undersigned counsel and pursuant to this Honorable Court's Order of June 1, 2018[1] [Document No. 2], file this Amended Class Action Complaint against Defendants The United States Soccer Federation, Inc. and US Youth Soccer Association, Inc.

---

[1] Pursuant to the June 1, 2018 Order of Court [Document No. 2] and Local Rule of Civil Procedure 5.2(D)(2), the names of the minor children are substituted for the above-captioned initials.

## PRELIMINARY STATEMENT

1.      This is a class action brought by the Representative Plaintiffs as a result of the failure of the Defendants, as herein referenced, to protect the Representative Plaintiffs and all of the other similarly situated individuals and members of the Class, and/or reduce the number of soccer-induced concussion injuries resulting from Defendants' failure to mandate necessary and proper headgear as a compulsory item of players' equipment.

## PARTIES

2.      Representative Plaintiff A.S. is a minor female and resident of the Commonwealth of Pennsylvania who currently participates in youth soccer throughout the Mid-Atlantic Region of the United States of America.

3.      Representative Plaintiff Cara Sherman is the parent and natural guardian of A.S. and is an adult citizen of the Commonwealth of Pennsylvania.

4.      A.S. has suffered soccer-induced concussions during play and is at increased risk, particularly as a minor, of latent brain injuries caused by repeated head impacts or the accumulation of sub-concussive hits in her soccer career.

5.      Representative Plaintiff A.S. is a minor female and resident of the Commonwealth of Pennsylvania who currently participates in youth soccer throughout the Mid-Atlantic Region of the United States of America.

6.      Representative Plaintiff Mary McCauley Siler is the parent and natural guardian of A.S. and is an adult citizen of the Commonwealth of Pennsylvania.

7.     A.S. has suffered soccer-induced concussions during play and is at increased risk, particular as a minor, of latent brain injuries caused by repeated head impacts or the accumulation of sub-concussive hits in her soccer career.

8.     Defendant United States Soccer Federation, Inc ("USSF" or "U.S. Soccer") is the governing body of soccer in all forms in the United States.

9.     USSF has its principal place of business in Chicago, Illinois at the "U.S. Soccer House," 1801 South Prairie Avenue, Chicago, Illinois.

## JURISDICTION

10.     USSF is subject to specific and general personal jurisdiction in the Western District of Pennsylvania; as described herein, USSF exerts tremendous authority over all aspects of soccer throughout the United States and regulates American soccer.

11.     Moreover, USSF has consistently staged and promoted soccer events in this District.

12.     Defendant U.S. Youth Soccer Association, Inc. ("USAYSA") identifies itself as the largest member of the USSF and its national office is located at 9220 World Cup Way, Frisco, Texas 75033.

13.     USAYSA is subject to specific and general jurisdiction in the Western District of Pennsylvania; USAYSA conducts tournaments throughout this district and it maintains numerous member clubs throughout the Commonwealth of Pennsylvania; each club is in turn is composed of numerous teams; USAYSA recognizes the vast number of Pennsylvania soccer players under its control, stating that "US Youth Soccer is made up of 55 member

State Associations; one in each state, and two in California, New York, Ohio, Pennsylvania and Texas."

14.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2) because (i) the aggregate value of the amount in controversy exceeds the sum or value of $5,000,000.00, (ii) there is minimal diversity of citizenship between Plaintiffs and Defendants, and (iii) the Class consists of more than 100 members.

15.     This Court has personal jurisdiction over Defendants because they intentionally avail themselves of the rights and privileges of conducting business in the Commonwealth of Pennsylvania, have continuous and systematic contacts with the Commonwealth of Pennsylvania, and the injuries giving rise to the claims herein occurred in the Commonwealth of Pennsylvania.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to the claims occurred in this District, and because Defendants: (i) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of their programs and services in this District, (ii) do considerable business in this District, and (iii) are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

17.     Over 24 million Americans play soccer and over 1.7 million females are registered with U.S. Soccer.

18.     As the number of soccer players continues to increase, the risk of serious injuries from concussions and repetitive head injuries has become increasingly recognized.

19.     Despite this, Defendants have failed to adopt and enforce Laws of the Game that would reduce the risk of preventable injuries resulting from concussions and repetitive head injuries.

20.     Defendants have failed to mandate and enforce the use of protective headgear for youth girl soccer players to prevent and/or reduce concussive symptoms and/or injuries.

21.     There is substantial evidence that young people may be more susceptible to damage resulting from repetitive concussive and sub-concussive brain trauma.

22.     In younger children, the long-term effects of brain trauma can become apparent years after injury, as normal developmental milestones are disrupted.

23.     Players who do *not* wear protective soccer headgear are 2.65 times more likely to suffer a concussion than those who do.

24.     USSF and USAYSA have adopted "Laws of the Game" that set forth compulsory equipment for players as: a shirt with sleeves, shorts, socks, shin guards, and footwear.

25.     Protective headgear is permitted, so long as the headgear is of a certain color, appearance and material, and is not dangerous to other players. Such headgear, however, is not required.

## CLASS ACTION ALLEGATIONS

26.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure Rule 23(b)(3) on behalf of themselves and a Class defined as follows:

> **Class:** All current or former female youth soccer players at any time who competed for a team relying on rules promulgated by Defendants.

27.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

28.     **Numerosity:** The members of the Class are so numerous that individual joinder of all members of the Class is impracticable; the exact number of the members of the Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.

   a.   On information and belief, thousands of female youth soccer players fall into the definition of the Class and Members of the Class can be identified through Defendants' records.

   b.   Members of the Class may be notified of the pendency of this action by recognized and approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

29.     **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to the following:

   a.   Whether Defendants engaged in the conduct as alleged herein;

   b.   Whether Defendants owed a duty to Plaintiffs and the Class;

   c.   Whether Defendants breached that duty;

   d.   Whether Defendants failed to mandate protective headgear;

    e.      Whether Plaintiffs and members of the Class are at increased risk of injury as a result of Defendants' breach; and

    f.      Whether Plaintiffs and the Class are entitled to equitable relief, including, but not limited to, medical monitoring and other injunctive relief.

30.    **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class, as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendants based upon the same negligent conduct.

31.    **Adequacy of Representation:** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and they will fairly and adequately protect the interests of the Class; Plaintiffs have retained counsel competent and experienced in complex litigation and class action matters. Plaintiffs intend to prosecute this action vigorously and the interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

32.    **Predominance and Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.

    a.      The damages suffered by the individual members of the Class may be relatively small in comparison to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

    b.      It would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action, because individual litigation would

increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

c.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

d.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

e.  The costs of medical monitoring to be incurred by Plaintiffs and members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

f.  Even if members of the Class could afford individual litigation, the court system could not.

g.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.

h.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I – NEGLIGENCE

33.    Plaintiffs hereby incorporate the above paragraphs as though set forth fully within.

34.    At all relevant times, each Defendant had a duty toward Plaintiffs and the Class to supervise, regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the players.

35.    Defendants knew or should have known that their actions or inaction in light of the rate and extent of concussions reported and made known to Defendants would cause harm to players in both the short- and long-term.

36.    Defendants breached the duty of due care they owed to Plaintiffs and the Class, both generally and in the following particular respects:

   a.    In failing to educate players and their parents concerning concussion safety and prevention;

   b.    In failing to educate players and parents about equipment known to reduce concussive symptoms and/or injuries;

   c.    In failing to require players wear headgear as to reduce concussive symptoms and/or injuries;

   d.    In failing to warn players and parents of the unreasonable risk of not wearing headgear;

   e.    In failing to rely upon up-to-date research regarding concussion risk and prevention;

   f.    In discouraging the use of headgear for the purpose of preventing concussive symptoms and/or injuries;

g.    In failing to properly research concussion prevention when Defendants knew or should have known concussion research is constantly progressing;

h.    In failing to promulgate rules and regulations to adequately address the dangers of repeated concussions and accumulation of sub-concussive hits, as to reduce short- and long-term injuries;

i.    In concealing and misrepresenting pertinent facts concerning concussion prevention equipment;

j.    In failing to adopt rules and reasonably enforce those rules to minimize the risk of players suffering debilitating concussions; and

k.    Other acts of negligence or carelessness that may materialize during the pendency of this action.

37.    It was reasonable and foreseeable to Defendants that their failures would flow downstream to the Rules and Laws of the Game enacted by other organizations.

38.    Plaintiffs and the Class relied upon the guidance, expertise, and instruction of Defendants in understanding risks associated with the serious and life-altering medical issue of concussive and sub-concussive risk in soccer.

39.    At all times, Defendants had superior knowledge of material information regarding the effect of repeated traumatic head injuries and available equipment to reduce those injuries but refused or otherwise failed to mandate the equipment as compulsory equipment.

40.    At all times pertinent hereto, Defendants knew or should have known that discouraging protective headgear use would hinder players from wearing protective headgear, despite the undeniable medical benefits of such use.

41.     At all times pertinent hereto, Defendants failed to recognize the nation-wide initiative to inform and educate league members about concussion prevention.

42.     The Plaintiffs individually and the Class members play soccer and are at risk due to Defendants' breaches.

43.     As a result of the foregoing, the Plaintiffs and the Class have an improper risk of injury caused by the misconduct of the Defendants.

44.     Moreover, Plaintiffs have no adequate remedy at law in that monetary damages cannot fully compensate them for the risk of long-term physical and economic losses due to concussions and sub-concussive injuries resulting from Defendants' failure to mandate necessary protective headgear.

45.     Instead, Plaintiffs are in need of medical monitoring as a remedy for Defendants' negligence where permitted under state law.

## **COUNT II – BREACH OF VOLUNTARY UNDERTAKING**

46.     At all relevant times, each Defendant voluntarily assumed a duty toward Plaintiffs and the Class to supervise, regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the players.

47.     Defendants acted carelessly and negligently in fulfilling their assumed duties as the regulatory bodies for soccer and soccer players, including Plaintiffs and the Class.

48.     In addition, Defendants knew or should have known that their action or inaction in light of the rate and extent of concussions reported and made known to Defendants would cause harm to players in both the short- and long-term.

49.     Defendants knew that through the reach of the Laws of the Game they had the power to direct and influence how the greater community treats concussion management issues and by publication of the Laws of the Game assumed a duty to protect Plaintiffs and the Class.

50.     Defendants had an independent assumed and voluntary duty to enact and enforce Laws of the Game that properly protect players.

51.     Defendants were careless and negligent by breaching their assumed and voluntary duty of due care for the benefit of the Plaintiffs and the Class, both generally and in the following particular respects as set forth above and summarized below:

    a.    In failing to educate players and their parents concerning concussion safety and prevention;

    b.    In failing to educate players and parents about equipment known to reduce concussive symptoms and/or injuries;

    c.    In failing to require players wear headgear as to reduce concussive symptoms and/or injuries;

    d.    In failing to warn players and parents of the unreasonable risk of not wearing headgear;

    e.    In failing to rely upon up-to-date research regarding concussion risk and prevention;

    f.    In discouraging the use of headgear for the purpose of preventing concussive symptoms and/or injuries;

    g.    In failing to properly research concussion prevention when Defendants knew or should have known concussion research is constantly progressing;

      h.      In failing to promulgate rules and regulations to adequately address the dangers of repeated concussions and accumulation of sub-concussive hits, as to reduce short- and long-term injuries;

      i.      In concealing and misrepresenting pertinent facts concerning concussion prevention equipment;

      j.      In failing to adopt rules and reasonably enforce those rules to minimize the risk of players suffering debilitating concussions; and

      k.      Other acts of negligence or carelessness that may materialize during the pendency of this action.

52.    It was reasonable and foreseeable to Defendants that their failures would flow downstream to the Rules and Laws of the Game enacted by other organizations.

53.    Plaintiffs individually and the Class members play soccer and are at risk due to Defendants' breaches.

54.    As a result of the foregoing, the Plaintiffs and the Class have an improper risk of injury caused by the misconduct of the Defendants.

55.    Moreover, Plaintiffs have no adequate remedy at law in that monetary damages cannot fully compensate them for the risk of long-term physical and economic losses due to concussions and sub-concussive injuries. Instead, Plaintiffs are in need of medical monitoring as a remedy for Defendants' negligence where permitted under state law.

## COUNT III – FRAUDULENT CONCEALMENT

56.    Plaintiffs on behalf of themselves and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

57.    Defendants have known that concussions, sub-concussive hits, and repeated blows to the head can cause neurological injury.

58.    Scientific and medical studies have shown the existence of TBI as a result of contact sports as far back as the 1920's in boxing.

59.    Increased technology and medical advances since that date have added to the composite of neuroscience research regarding concussions.

60.    Defendants passively issued guidelines about the existence of concussions but underplayed the dangers of neurological injury.

61.    On information and belief, through a concealment of these material facts, Defendants created a false belief held by the Plaintiff that: a) concussions and sub-concussive hits were not as dangerous as they actually are; and b) they would be cared for in the event of the injury out of the duty that the Defendants had to the Plaintiff.

62.    Further, Defendants had a duty to warn their members about the dangers of concussions and the equipment available to prevent concussion injuries.

63.    Defendants failed in this duty and/or falsely represented the effects of neurological injury and the impact it could play in the future lives of players.

64.    On information and belief, Defendants failed in this duty and/or falsely represented the effects of protective headgear in substantially reducing concussions and concussion symptoms in Plaintiffs and the Class.

65.    On information and belief, this concealment of material facts directly led to Plaintiffs' exposure to danger after suffering a concussion.

66.    These material facts on concussion research could have prevented many players from suffering soccer-induced concussions.

67.    Defendants' knowledge, concealment of that knowledge and/or intentional blindness, and ineffectual efforts to promote a culture of player-safety all contributed to the injuries sustained by Plaintiffs and putative Class.

68.    Plaintiffs, individually and on behalf of the Class, seek actual damages for Defendants' fraudulent concealment, as well as interest, reasonable attorneys' fees, expenses, and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs individually and on behalf of the Class, request that the Court enter an Order providing for the following relief:

a.   Certify this case as a class action on behalf of the Class defined above, appoint Plaintiffs as Class Representative, and appoint their counsel as Class Counsel;

b.   Declare that Defendants' actions, as set out above, constitute negligence and fraudulent concealment;

c.   Award all economic, monetary, actual, consequential, compensatory, and punitive damages caused by Defendants' conduct, including without limitation damages for past, present, and future medical expenses, and other out of pocket expenses;

d.   Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

e.   Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

f.   Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

g.   Award such other and further relief as equity and justice may require.

Respectfully submitted,

J. MURPHY FIRM                                    QUINN LOGUE LLC

By:   _/s/ Joseph P. Murphy_____           By:   _/s/ John E. Quinn_____
Joseph P. Murphy, Esquire                              John E. Quinn, Esquire
Pa. ID No. 83120                                         Pa. ID No. 23268
jmurphy@jmurphyfirm.com                           jquinn@quinnlogue.com

310 Grant Street                                         Matthew T. Logue, Esquire
Suite 3309                                                Pa. ID No. 87416
Pittsburgh, PA 15219                                    matt@mattlogue.com
(412) 521-2000

THE LAW OFFICE OF SCOTT              James R. Thornburg, Esquire
MICHAEL HARE                                       Pa. ID No. 309578
                                                             james@quinnlogue.com

By:   _/s/ Scott M. Hare_____                     J. Julius Bolock, Esquire
Scott M. Hare, Esquire                                  Pa. ID No. 318916
Pa. ID No. 63818                                         jbolock@quinnlogue.com
scott@scottlawpgh.com

Frick Building, Suite 1806                             200 First Avenue, Third Floor
437 Grant Street                                         Pittsburgh, PA 15222-1512
Pittsburgh, PA 15219-6101                            (412) 765-3800
(412) 338-8632

*Counsel for Plaintiffs*

Date:   June 5, 2018